**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

TANIA NAKYA WALTERS,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　v.　　　　　　　　　　　　*　　　　Civil Action No. AW-08-711
　　　　　　　　　　　　　　　　　*
PRINCE GEORGE'S COUNTY, MD, *et al.*,　*
　　　　　　　　　　　　　　　　　*
　　　　Defendants.　　　　　　　　*
　　　　　　　　　　　　　　　　　*

**********************************************************************************

<u>**MEMORANDUM OPINION**</u>

Plaintiff Tania Nakya Walters ("Walters") brings this action against Defendants Marissa Davis ("Davis"), James Kelly ("Kelly"), and Prince George's County, Maryland ("PG County"), alleging tort claims and constitutional violations under federal and state law. Currently pending before the Court are Defendants' Motion for Summary Judgment (Doc. No. 48) and Plaintiff's Motion for Leave to File Surreply to Defendants' Memorandum (Doc. No. 58). The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motions. The issues have been briefed, and no hearing is deemed necessary.[1] *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will deny Plaintiff's Motion for Leave to File Surreply, and grant in part and deny in part Defendants' Motion for Summary Judgment.

---

[1] Accordingly, Plaintiff's Request for a Hearing on Defendants' Motion for Summary Judgment (Doc. No. 57) is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2008, Plaintiff filed an eight-count complaint against PG County, Chief of Police Melvin High ("High"),[2] Defendants Davis and Kelly, and Officers Jane and John Does 1-25, alleging battery, emotional distress, negligence, false arrest, false imprisonment, malicious prosecution, defamation, and violations of the federal and the State of Maryland constitutions. Pursuant to a hearing on April 20, 2009, the Court dismissed all claims against High and John and Jane Does 1-25, and bifurcated Plaintiff's claims against Defendant PG County from those against Defendants Davis and Kelly. The remaining counts are as follows: battery against Defendants Davis and Kelly (Count I); false imprisonment against Defendants Davis and Kelly (Count IV); a 42 U.S.C. § 1983 claim based on violations of the Fourth and Fourteenth Amendments against Defendants Davis, Kelly, and PG County (Count VII); and violations of Articles 24 and 26 of the Maryland Declaration of Rights against Defendants Davis, Kelly, and PG County (Count VIII). Both Defendants Davis and Kelly are now moving for summary judgment on the remaining counts.[3]

The following facts are uncontroverted unless otherwise noted. On August 26, 2007, Plaintiff drank one Corona beer and was driving two friends to a cookout in Upper Marlboro, Maryland. While driving on Marlboro Pike, in Capitol Heights, Maryland, Plaintiff rear-ended a vehicle when she swerved into another lane to avoid being hit by a speeding car. The collision caused the airbags to deploy and Plaintiff sustained a gash to her left leg. Concerned citizens called 911 to report the accident. Plaintiff, claiming that she was disoriented and distressed,

---

[2] In her original complaint, Plaintiff mistakenly referred to the Chief of Police as "Melvin White." In her Second Amended Complaint, however, Plaintiff correctly named "Melvin High" as the Chief of Police.

[3] PG County joins in Defendants Davis and Kelly's Motion for Summary Judgment to the extent that the Court grants any portion of the motion.

wandered to the parking lot of a nearby church, where police officers Jordan Swonger and James Matthews found her.

Plaintiff claims that she was returning to her car from the parking lot to retrieve her driver's license when Officers Swonger and Matthews handcuffed and arrested her. Officers Swonger and Matthews, however, assert that when they arrived at the accident scene, they found an incoherent Plaintiff "screaming, turning in a circle, and flailing her arms" in the church parking lot. (Doc. No. 48, Ex. 3 at 16.) According to Officers Swonger and Matthews, Plaintiff would not respond to their commands to sit down, nor would she answer questions about the accident. Officer Swonger, also a certified emergency medical technician ("EMT"), requested additional backup units and a taser because he believed that Plaintiff exhibited symptoms of a person under the influence of drugs and/or alcohol or was mentally ill.

When Officer Swonger tried to handcuff Plaintiff, she raised her elbow toward his face. In response, he extended his asp baton towards Plaintiff. After Officer Swonger revealed his baton, Plaintiff was compliant and he handcuffed her without incident. Officer Swonger stated in his deposition that Plaintiff did not assault him. (Doc. No. 58, Ex. 3 at 58.) Plaintiff does not allege, and Officers Swonger and Matthews deny, ever striking her. When Defendants Davis and Kelly took custody of Plaintiff, however, they allege that they believed that she had assaulted a police officer.

Defendants Davis and Kelly heard Officer Swonger's request for additional police units on the police communications radio and traveled to the accident scene. Defendant Davis was training Defendant Kelly that day. Although Defendants Davis and Kelly learned that enough officers had arrived and they were no longer needed, they elected to respond anyway because Defendant Davis believed the incident would provide a good training opportunity for Defendant

Kelly. When Defendants Davis and Kelly arrived at the accident scene, Plaintiff was already handcuffed. Officer Swonger warned Defendants Davis and Kelly to be careful when transporting Plaintiff because she had previously exhibited irrational behavior. After Defendant Kelly interviewed witnesses at the accident scene, Defendants Davis and Kelly transported Plaintiff to the Maryland State Police ("MSP") barracks. Defendants never conducted a field sobriety test because they did not want to remove Plaintiff's handcuffs.

The in-car camera recording captured the events that transpired en route to and at MSP. The video shows the handcuffed Plaintiff being placed and buckled into the front passenger seat of Defendant Davis' cruiser with her arms behind her back. Defendant Davis drove while Defendant Kelly sat in the back seat behind her. During the drive to MSP, Defendant Davis told Plaintiff that she was going to the hospital, to get treatment for her leg, and then to the Prince George's County Department of Corrections ("DOC") in Upper Marlboro, Maryland, because she had assaulted a police officer. Plaintiff was compliant during the ride.

When Defendants Davis and Kelly and Plaintiff arrived at MSP, Defendant Davis entered the building, presumably to obtain a blood kit. Before she went inside, Defendant Davis instructed Defendant Kelly to readjust Plaintiff's arm and seatbelt. Defendant Kelly opened Plaintiff's door to do so, and when he finished, closed Plaintiff's door and returned to his seat. Then, in response to an inaudible question from the Plaintiff, Defendant Kelly informed Plaintiff she was going to jail for assaulting a police officer.

Shortly thereafter, Defendant Davis returned to the cruiser to ask if Plaintiff would be willing to submit to a blood test for drugs and alcohol. Plaintiff declined and Defendant Davis closed the door and left. Plaintiff asked Defendant Kelly several times to take her inside MSP so she could telephone her mother and lawyer, and Defendant Kelly replied each time that she had

to wait until she got to the DOC. Defendant Kelly repeatedly asked Plaintiff not to "pop your seatbelt." It is unclear from the video whether Plaintiff was popping her seatbelt. Defendant Kelly used the police radio to ask Defendant Davis to return to the cruiser. When Defendant Davis returned from MSP, Plaintiff removed her seatbelt while she was seated and handcuffed. Someone, presumably Defendant Davis or Kelly, opened Plaintiff's door. Plaintiff then argued with Defendants Davis and Kelly about whether she could enter MSP.

Since the in-car camera could not capture Plaintiff's lower-body movements, the following events are contested. According to Defendants, Plaintiff placed her foot outside the car against their instructions. Defendant Davis repeatedly threatened to use *olerium capsicum* ("OC" or "pepper spray") on Plaintiff unless she put her foot back in the car. Plaintiff denies putting her foot outside the car and the video captured her sitting face-forward, but she can be heard saying, "don't touch me," and "spray me and see what happens." Within a minute of issuing repeated warnings to Plaintiff, Defendant Davis pepper-sprayed Plaintiff.

The video shows Defendant Davis deploying three bursts of pepper spray at a close range within a thirty-second time span. After the first spray, Plaintiff fell backwards, out of camera range. According to Defendant Davis, the first spray hit the side of Plaintiff's head, which was why she deployed a second spray. After the second spray hit Plaintiff's face, Defendant Davis proceeded to deploy a third spray, also directly hitting Plaintiff's face. Throughout the entire episode, Plaintiff screamed and kicked.

Within minutes of pepper-spraying Plaintiff, Defendants Davis and Kelly removed Plaintiff from the cruiser. After Plaintiff was removed, she was pinned to the ground for several minutes on the ground by an officer. At some point, someone poured water on Plaintiff's face to decontaminate her. Plaintiff was placed into a WRAP device, which bound Plaintiff's arms and

legs, and transported by ambulance to Southern Maryland Hospital. Defendant Kelly completed a Petition for Emergency Evaluation. Since Defendant Davis had deployed OC spray on Plaintiff while she was handcuffed, members of the Special Incident Response Team ("SIRT") responded to the hospital. Plaintiff was administered medication by hospital personnel and discharged later that evening.

Defendant Kelly issued Plaintiff traffic citations for violating the following Maryland laws: (1) unsafe lane change; (2) failure of driver involved in an accident to remain at scene; (3) failure of driver involved in an accident to render assistance; (4) failure of driver in bodily injury accident to furnish required identification; and (5) attempt by driver to elude uniformed police. On January 9, 2008, the State's Attorney's Office entered the citations as *nolle prosequi*.

Plaintiff claims that as a result of the excessive and unnecessary force used by Defendants Davis and Kelly, she received numerous contusions and lacerations, including a contusion of the chest wall. In addition to her physical injuries, Plaintiff claims she suffered emotional distress and trauma. As a result of these injuries, Plaintiff alleges she was unable to return to her former occupation as a bus driver, and therefore experienced an extensive period of unemployment. According to Plaintiff, within twenty-four hours after she was released from the hospital, her physical injuries and respiratory distress caused her to lose consciousness and she had to be transported to Providence Hospital. Plaintiff further alleges that Defendants' actions caused her to suffer from post-traumatic stress disorder.

## II. PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

Generally, surreply memoranda are not permitted. *See* Local Rule 105.2(a) (D. Md. 2008). However, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *See*

*Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).  Plaintiff seeks to file a surreply to address issues that she claims Defendants raised for the first time in their Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.  Plaintiff disputes Defendants' characterization of certain facts as material and expresses concerns that the Court may be misled by Defendants' description of the facts.  Defendants maintain that they raised no new legal issues or theories and urge the Court to deny Plaintiff's Motion.

Specifically, Plaintiff is concerned with Facts 1, 2, 3, 9, 10, and 11 from Defendants' Reply.  (Doc. No. 54 at 1-2.)  The facts are as follows:

Fact 1:  Plaintiff consumed one (1) Corona beer prior to driving her vehicle.

Fact 2:  A two-car traffic accident occurred on Marlboro Pike at Brooks Drive, Capitol Heights, Maryland, causing the airbags in Plaintiff's car to deploy when Plaintiff rear-ended a car.

Fact 3:  After the collision, Plaintiff left the accident scene and proceeded to a nearby Church parking lot.  Plaintiff's only memory after the accident was being helped out of the car and taken to a church parking lot.

Fact 9:  Prior to being placed into the police cruiser, Plaintiff recalled she was going to be charged with seven (7) misdemeanor or felony offenses.

Fact 10: While en route to the scene of the accident on Marlboro Pike and Brooks Drive, Defendant Davis, the Field Training Officer (FTO), was cancelled for service but opted to respond to the scene as a training opportunity for Defendant Kelly.

Fact 11: The in-car camera recorded the events that transpired while Plaintiff was being transported in the police cruiser and at the Maryland State Police barracks in Forestville, Maryland.

(Doc. No. 54 at 1-2.)

The Court finds that Defendants have raised no new legal issues that would warrant granting Plaintiff's Motion to File Surreply.  In her Opposition, Plaintiff conceded that she consumed one Corona, had been involved in a car accident, and that Defendants Davis and Kelly chose to respond to the accident scene even though they were no longer needed.  (*See* Doc. No.

53 at 7, 9.) The Court acknowledges Plaintiff's explanation for not being present at the accident scene when Officers Swonger and Matthews arrived. Furthermore, the Court did not consider Plaintiff's alleged recollection of being charged with seven offenses as a material fact. As to Defendants' description of the events captured by the in-car camera and Plaintiff's concern about the Court being misled, the Court did not rely on Defendants' characterization of the events and recognizes that many of the material disputes regarding Plaintiff's lower-body movements were not recorded. Since Defendants have raised no new legal issues, the Court accordingly denies Plaintiff's Motion to File Surreply.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay

statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## 2. ANALYSIS

Plaintiff seeks recovery on four counts: battery against Defendants Davis and Kelly (Count I); false imprisonment against Defendants Davis and Kelly (Count IV); violation of 42 U.S.C. § 1983 based on the Fourth and Fourteenth Amendments against all Defendants (Count VII); and violation of Articles 24 and 26 of the Maryland Declaration of Rights against all Defendants (Count VIII). The Court will examine the state and federal constitutional claims before discussing the tort claims, since the former issues encompass analyses used in the latter.

### A. Count VII: 42 U.S.C. § 1983

Defendants assert that they are entitled to summary judgment on the 42 U.S.C. § 1983 claim because (1) they used no excessive force in violation of the Fourth and Fourteenth Amendments, and (2) even assuming they violated Plaintiff's constitutional rights, qualified immunity shields them from liability.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to establish a valid claim under § 1983, Plaintiff must show that Defendants' actions deprived her of "an actual constitutional right [that] was clearly established at the time of the alleged violation." *Robles v. Prince George's County, Md.*, 302 F.3d 262, 268

(4th Cir. 2002). In *Graham v. Connor*, the Supreme Court instructed that when addressing an excessive force claim brought under § 1983, a court must begin its analysis by "identifying the specific constitutional right allegedly infringed by the challenged application of force." 490 U.S. 386, 394 (1989). Therefore, the Court must first determine whether Plaintiff's claims are governed by the Fourth or Fourteenth Amendment.

### i. Fourth Amendment

Defendants contend that they are entitled to summary judgment on their § 1983 claim based on the Fourth Amendment because Plaintiff was a pretrial detainee whose claims of excessive force are properly governed by the Due Process Clause of the Fourteenth Amendment. Plaintiff maintains that since the police had continuously detained her, her Fourth Amendment rights were also violated and she should not be classified solely as a pretrial detainee.

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. Amend. IV. It "governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997) (citing *Graham*, 490 U.S. at 388), *abrogated on other grounds by*, *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010). The Fourth Circuit has "rejected any concept of a continuing seizure rule, noting that 'the Fourth Amendment . . . applies to the initial decision to detain an accused, not to the conditions of confinement after that decision has been made.'" *Robles*, 302 F.3d at 268 (citing *Riley*, 115 F.3d at 1163). Thus, "[o]nce the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply." *Id.*

At the outset, the Court finds that Plaintiff is a pretrial detainee, whose claims of excessive force are properly governed by the Due Process Clause of the Fourteenth Amendment.

Pretrial detainees are persons who have been "lawfully arrested and [are] being held prior to a formal adjudication of guilt." *Riley*, 115 F.3d at 1162-63; *see Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (describing a pretrial detainee as a person who had been arrested, handcuffed, and was being transported by officers to jail). People who are involuntarily taken into police custody are pretrial detainees. *See Young v. City of Mount Ranier*, 238 F.3d 567, 576 n.5 (4th Cir. 2001) (classifying the deceased victim as a pretrial detainee, even though "there [was] no indication that he was under arrest or would later have been arrested" because he had been involuntarily taken into police custody).

Here, Plaintiff is properly classified as a pretrial detainee because she was handcuffed and involuntarily taken into police custody by Officers Swonger and Matthews. Since Plaintiff does not allege that Officers Swonger and Matthews used excessive force in handcuffing her, her Fourth Amendment rights were not violated. Plaintiff complains of events that occurred after Defendants Davis and Kelly took custody of her, when the Fourth Amendment had ceased to apply because the single act of detaining Plaintiff had already been completed and she was already in police custody. As the Fourth Circuit does not recognize continuing seizure, Plaintiff's argument to this effect is unavailing. Since Plaintiff was not an arrestee subject to Fourth Amendment protections, the Court will accordingly grant Defendant's Motion for Summary Judgment on the Fourth Amendment violation of the § 1983 claim.

### ii. Fourteenth Amendment Analysis

Defendants maintain that they are entitled to summary judgment on the Fourteenth Amendment claim because the actions of Officers Davis and Kelly did not amount to punishment, were legitimate, and Plaintiff suffered only *de minimis* injuries. The Court disagrees.

The Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. In the Fourth Circuit, "excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment, which provides the standard for 'evaluating the constitutionality of conditions or restrictions of pretrial detention.'" *Riley*, 115 F.3d at 1166 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). In order to conclude that Plaintiff's rights were violated, it is necessary to find that Defendants' actions "amounted to punishment and were not merely 'an incident of some other legitimate governmental purpose,' and that the injury resulting from their actions was more than *de minimis*." *Robles*, 302 F.3d at 269 (internal citations omitted). Summary judgment is inappropriate where pretrial detainees can show, by a preponderance of the evidence, that police officers violated their Fourteenth Amendment due process right to be free of excessive force. *See Simms v. Hardesty*, 303 F. Supp. 2d 656, 668 (D. Md. 2003) (denying defendant correctional officers' motion for summary judgment because a genuine issue of material fact existed as to whether the officers used excessive force against a pretrial detainee).

The Court finds that there are material disputes as to whether Defendants' use of force against Plaintiff amounted to punishment and whether Defendants' actions served a legitimate governmental purpose.[4] The Supreme Court has instructed that "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." *Bell*, 441 U.S. at 539; *see United States v. Cobb*,

---

[4] It is unclear to the Court at this point which of Defendant Kelly's actions constitutes excessive force and battery. However, the Court notes that, depending on further development of the facts, it may be necessary to revisit the effect of Defendant Kelly's actions at a later point.

905 F.2d 784, 789 (4th Cir. 1990) (stating that "the punitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate non-punitive governmental objective").

Legitimate law enforcement objectives, which include enhancing the safety of officers, the public, and the pretrial detainee, ensuring the presence of the pretrial detainee at trial, and transporting a pretrial detainee, are not arbitrary and purposeless.  *See Robles*, 302 F.3d at 269-70 (holding that tying a pretrial detainee to a metal pole in a deserted parking lot in order to effect a transfer of custody failed to serve a legitimate government objective, but was rather arbitrary and purposeless).  A deputy's repeated tasering of a handcuffed plaintiff who was restrained in the back of a police cruiser served no legitimate purpose, but was "wanton and unnecessary," even though the plaintiff had "yelled, cursed and banged her head against the police car window" so intensely that "the vehicle rocked" and the officer had to stop driving. *Orem*, 523 F.3d at 446-47.  The *Orem* court, affirming the trial court's denial of defendant's motion for summary judgment, concluded that since the deputy did not use the taser for a legitimate purpose, "such as protecting the officer[], protecting [the plaintiff], or preventing [the plaintiff's escape]," his intent was "to punish or intimidate" the plaintiff.  *Id.* at 449; *see also Stewart v. Beaufort Co.*, 481 F. Supp. 2d 483, 487, 491 (D.S.C. 2007) (denying defendant's motion for summary judgment and finding that a deputy used unnecessary and excessive force when he slammed a handcuffed and unresisting pretrial detainee into the side of a door and threw him onto the ground, causing lacerations and contusions to the pretrial detainee's face, nose, eyes, lips, shoulder, and back).

Defendants Davis and Kelly assert that Defendant Davis deployed the pepper spray against Plaintiff because she verbalized her desire to leave the vehicle; she tried to remove her

seatbelt; she refused to obey their commands; she placed her feet outside the car; they wanted to restore order; and they sought to prevent Plaintiff from injuring herself, others, and themselves. (Defs.' Mot. for Summ. J. 19-21.) While the in-car camera recording showed Plaintiff removing her seatbelt and verbally defying Defendants Davis and Kelly, it did not show whether Plaintiff placed her feet outside the car or tried to escape. Since Plaintiff and Defendants disagree and the video does not capture Plaintiff's lower-body movement, there is a material dispute as to whether Plaintiff posed a danger to herself, Defendants Davis and Kelly, or anyone else, which precludes granting summary judgment.

PG County's Use of Force Continuum ("Continuum") categorizes OC as an intermediate use of force, only to be applied in response to "active resistance." (Doc. No. 14, Ex. 2.) The Continuum provides some guidance as to when police officers should deploy pepper spray:

- To control a dangerous or violent subject when deadly force does not appear to be justified or necessary [;]
- There is a reasonable expectation that it is unsafe for officers to approach within contact range of the subject [;]
- When necessary to defend the officer or others from force or the threat of force that could cause injury to any person [;]
- When it would be unsafe or impractical to approach a person to deploy a chemical agent from a canister [; and/or]
- When lower levels of force would be ineffective or inappropriate and arrest is the officer's objective.

(Doc. No. 14, Ex. 2.)

There are material disputes as to whether Plaintiff was dangerous or violent, and whether it was necessary for Defendants Davis and Kelly to defend themselves or others from force or the threat of force. Plaintiff had been arrested, was handcuffed, restrained, and seated in a police cruiser when Defendant Davis pepper-sprayed her three times. Although Plaintiff vocally defied Defendants Davis and Kelly, reasonable jurors could conclude that, as a handcuffed and restrained pretrial detainee, she did not pose a sufficient risk of endangering anyone, nor was it

likely for her to escape. Reasonable jurors could also conclude that Defendant Davis' repeated spraying of Plaintiff at closer range than the PG County Police Department guidelines served no legitimate law enforcement purpose, but rather evinced her intent to punish, or inflict unnecessary and wanton pain and suffering. Accordingly, while the Court expresses no view, it does however find that there is a genuine material dispute as to whether Defendant Davis' repeated pepper spraying of Plaintiff amounted to punishment that served no legitimate purpose.

The Court is also satisfied that Plaintiff has sufficiently demonstrated that she suffered more than *de minimis* injuries. Punishment must mean "something more than trifling injury or negligible force" because "without a *de minimis* threshold, every 'least touching' of a pretrial detainee would give rise to a section 1983 action under the Fourteenth Amendment." *Riley*, 115 F.3d at 1167. Mental and emotional distress satisfy the *de minimis* threshold and is compensable under § 1983. *See Robles*, 302 F.3d at 270 (finding that a plaintiff, whom the police had handcuffed to a metal pole and left alone in a deserted parking lot at night, suffered more than *de minimis* injuries because he felt "frightened, vulnerable, and humiliated" and "had trouble sleeping and was scared to leave his home"); *see also Orem*, 523 F.3d at 447-48 (holding that "electric shock, pain, and . . . a scar" are more than *de minimis* injuries).

Plaintiff has provided sufficient evidence to support her allegations that she sustained severe and permanent physical and emotional injuries, which required hospitalization, follow-up care, and counseling. Plaintiff's injuries are compensable under § 1983. Accordingly, the Court finds that Plaintiff has demonstrated she suffered more than *de minimis* injuries. Since material disputes exist as to whether Defendants' conduct amounted to punishment that served no legitimate law enforcement purpose and Plaintiff has shown that she suffered more than *de*

*minimis* injuries, the Court must now consider whether Defendants are entitled to qualified immunity.

### iii. Qualified Immunity

Defendants contend that even if they had violated Plaintiff's constitutional rights, they are still entitled to summary judgment because their actions are protected by qualified immunity. Plaintiff urges this Court to deny Defendants qualified immunity, arguing that Defendants used excessive force, which reasonable officers would know to be unconstitutional.

Qualified immunity must be resolved by the trial judge at the earliest possible stage in litigation because it is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity shields government officials performing discretionary functions from civil liability as long as they do not violate "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a police officer asserts qualified immunity as a defense, the court must first determine "whether the facts, when viewed in the light most favorable to a plaintiff, show that the [police officer]'s conduct violated a constitutional right." *Mazuz v. Md.*, 442 F.3d 217, 225 (4th Cir. 2006). If the court finds a violation, it must then determine "whether it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). The officer's conduct is judged from a standard of objective reasonableness; therefore, "good or evil intentions of the [officer] play no direct role in the analysis." *Shoemaker v. Smith*, 725 A.2d 549, 558 (Md. 1999) (discussing the standard for qualified immunity under § 1983). While "the purely legal question of whether the constitutional right at issue was clearly established" can always be decided at the summary judgment stage, if there exists "a genuine

question of material fact regarding whether the conduct allegedly violative of the right actually occurred," the factual dispute must be reserved for trial. *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2003) (citation and quotation omitted). While the Court finds, as a matter of law, that pretrial detainees have a clearly established constitutional right to be free from excessive force under the Fourteenth Amendment, it also finds that material factual disputes preclude a conclusive ruling of qualified immunity at this stage. *See Orem*, 523 F.3d at 448-49 (affirming the denial of qualified immunity at the summary judgment stage because reasonable jurors could have found a deputy's tasering of a handcuffed pretrial detainee objectively unreasonable).[5]

The in-car camera recording shows a handcuffed Plaintiff being pepper sprayed within a minute after receiving verbal warnings from Defendant Davis. It also shows Defendant Davis spraying Plaintiff in the face three times within a thirty-second interval, at a closer range than the recommended five feet. On these facts, when the evidence is viewed in the light most favorable to Plaintiff, a jury could conclude that Defendants Davis and Kelly's conduct violated Plaintiff's Fourteenth Amendment Due Process right to be free from the use of excessive force. *Robles*, 302 F.3d at 271.

However, the recording did not capture disputed material events which may justify Defendant Davis' use of pepper spray. Specifically, there are genuine factual questions as to whether Defendant Davis' use of force was necessary for protecting herself, Defendant Kelly, or Plaintiff; whether she gave Plaintiff a reasonable time to comply with her directions; and whether Plaintiff was in danger of harming herself or escaping. These are factual findings best reserved

---

[5] It is also "clearly established that the unnecessary use of force against an unresisting, handcuffed pretrial detainee resulting in more than *de minimis* injuries is an excessive use of force in violation of the Due Process Clause." *Stewart*, 481 F. Supp. 2d at 491. Furthermore, it is well settled that "mere words by a pretrial detainee can[not] justify the use of physical force by a police officer." *Cobb*, 905 F.2d at 789.

for the jury. Accordingly, the Court finds that qualified immunity is not grounds for granting Defendants summary judgment at this time.

### B. Count VIII: Articles 24 and 26 of the Maryland Declaration of Rights

Plaintiff contends that Defendants violated her state constitutional rights under Articles 24 and 26 of the Maryland Declaration of Rights. Article 24, which protects due process, is construed *in pari materia* with the Fourteenth Amendment of the United States. *Robles*, 302 F.3d at 272. Since Plaintiff has shown that a material factual dispute exists as to the Fourteenth Amendment claim, likewise a material factual dispute exists as to the Article 24 claim. Both parties agree that "qualified immunity does not apply to constitutional claims" in Maryland. *Williams v. Prince George's County*, 685 A.2d 884 (Md. Ct. Spec. App. 1996).

Article 26, which protects the right to be free from unreasonable searches and seizures, is construed *in pari materia* with the Fourth Amendment. *Mazuz*, 442 F.3d at 223. As previously discussed, Plaintiff's Fourth Amendment rights were not violated because she was already arrested when Defendants Davis and Kelly took custody of her. Since Article 26 is construed *in pari materia* with the Fourth Amendment, the Court will grant Defendant's Motion for Summary Judgment on the Article 26 claim.

### C. Count I: Battery

Defendants allege that their contact with Plaintiff was legally justified and privileged. Plaintiff counters that Defendants battered her by repeatedly deploying pepper spray in her face without legal justification because her feet were not outside the car.

A battery occurs when a person makes an intentional, harmful, or offensive contact with another person without consent or justification. *See Nelson v. Carroll*, 735 A.2d 1096, 1099-1100 (Md. 1999) (holding that the defendant committed battery when he struck the plaintiff on

the side of his head with a handgun).  Here, a key issue of material fact exists as to whether

Defendant Davis was legally justified in repeatedly pepper-spraying Plaintiff.  Defendant Davis

justifies her action on the bases that Plaintiff was trying to escape from the car and that she was a

danger to herself and the officers.  As discussed above, not only does Plaintiff dispute

Defendants' allegations, the video footage does not conclusively resolve this dispute.

Furthermore, oral provocation by a handcuffed pretrial detainee is not sufficient justification for

repeatedly deploying pepper spray.  *See Cobb*, 905 F.2d at 789.  The Court finds that there is a

genuine material dispute as to whether Defendant Davis was justified in pepper spraying

Plaintiff.  Accordingly, the Court denies Defendants' motion for summary judgment as to the

battery count.

### D.  Count IV: False Imprisonment

Plaintiff alleges that Defendants are liable for false imprisonment because they

unlawfully arrested and detained her without legal justification.  Defendants counter that they are

not liable for false imprisonment because Officers Swonger and Matthews were legally justified

in arresting Plaintiff based on her erratic behavior after the car accident and Defendants Davis

and Kelly were legally justified in transporting her.

To set forth a claim for false imprisonment, Plaintiff must show: (1) the deprivation of

the liberty of another; (2) without consent; and (3) without legal justification.  *See De Ventura v.*

*Keith*, 169 F. Supp. 2d 390, 398 (D. Md. 2001).  A warrantless arrest is only justified if the

officers had probable cause to believe that a crime has been, or is about to be, committed.  *See*

*Cooper v. Dyke*, 814 F.2d 941, 946 (1987).  Probable cause is determined from the totality of the

circumstances known to a reasonable officer at the time of the arrest.  *Franklin v. Montgomery*

*Co., Md.*, No. DKC 2005-0489, 2006 WL 2632298, at *19 (D. Md. Sept. 13, 2006).  A court

must decide "whether these facts, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause." *Wallace v. Poulos*, No. DKC 2008-0251, 2009 WL 3216622, at *12 (D. Md. Sept. 29, 2009).

Defendants do not dispute that Plaintiff was deprived of her liberty without her consent. Plaintiff argues that Defendants Davis and Kelly's conduct was reckless and contends that they failed to explain their continued detention of Plaintiff. However, the Court agrees that Officers Swonger and Matthews were legally justified in taking Plaintiff into custody since she was believed to be the at-fault driver of the car accident, was behaving erratically, and disregarded the commands of officers trying to ascertain information from her. Since she was properly in police custody, Defendants Davis and Kelly were justified in transporting her to MSP, the hospital, and the DOC. As a result, the Court finds that Defendants Davis and Kelly had legal justification for their continued detention of Plaintiff. Accordingly, the Court grants Defendants' motion for summary judgment as to this count.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for Leave to File Surreply, and grant Defendants' Motion for Summary Judgment as to the following claims: false imprisonment (Count IV); the Fourth Amendment violation of § 1983 (Count VII); and the Article 26 violation (Count VIII). The Court will deny Defendants' Motion for Summary Judgment as to the following claims: battery (Count I); the Fourteenth Amendment violation of § 1983 (Count VII); and the Article 24 violation (Count VIII). A separate Order will follow.


|         July 19, 2010         |                    /s/                    |
|            Date               |         Alexander Williams, Jr.           |
|                               |         United States District Judge       |

20