**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| TANIA NAKYA WALTERS, | |
| Plaintiff, | |
| v. | Civil Action No. 8:08-cv-00711-AW |
| PRINCE GEORGE'S COUNTY, MARYLAND *et al.*, | |
| Defendants. | |

**MEMORANDUM AND ORDER**

**I.     Introduction**

This case sounds in excessive force. In essence, Plaintiff contends that Defendants/Officers Davis and Kelly used excessive force by pepper spraying her while she was in custody. Defendants moved for summary judgment. The Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment. Doc. Nos. 60–61. Defendants appealed and the Fourth Circuit affirmed this Court's decision, concluding that genuine disputes of material fact precluded summary judgment on the Officers' qualified immunity claim. The case is scheduled for a three-day jury trial on April 30, 2013. Five Motions in Limine are pending. The Court addresses these Motions one by one.

**II.    Defendants' First Motion in Limine**

Defendants ask the Court to preclude several items of evidence. The Court assesses each item of evidence separately.

**A.     Medical Bills**

Defendants ask the Court to preclude documentary evidence and testimony concerning some of Plaintiffs' medical bills[1] because she did not produce them during discovery. Defendants contend that the presentation of such evidence for the first time at trial would catch them by surprise, thereby prejudicing them. Plaintiff counters that the Court should not preclude such evidence because (1) it is relevant and otherwise admissible and (2) Defendants did not file a motion to compel regarding the medical bills.

Under Rule 26, without awaiting a discovery request, a party must provide to other parties "a copy—or a description by category and location—of all documents, . . . the disclosing party has in its possession, custody, or control and may use to support its claims . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Furthermore, a party who has made a 26(a) disclosure or who has responded to an interrogatory, request for production, or request for admission must supplement or correct its disclosure or response in a timely manner. *See* Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c) sets forth procedural remedies for the failure to make disclosures. Pertinently, it provides:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is **harmless**.

Fed. R. Civ. P. 37(c)(1) (emphasis added).

In the Fourth Circuit, courts must apply a five-factor test when deciding whether the failure to provide information was substantially justified or harmless. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003). They are: "(1) the surprise

---

[1] Defendants do not dispute that Plaintiff provided medical bills from Southern Maryland Hospital Center; the admission of these bills is not in dispute.

to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* at 597. "Four of these factors—surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence—relate mainly to the harmlessness exception . . . ." *Id.* "[T]he remaining factor—explanation for the nondisclosure—relates primarily to the substantial justification exception." *Id.* District courts enjoy "broad discretion" when applying these factors. *Id.*

In this case, the balance of these factors swings in favor of Plaintiff. As for factor (1), seeing the medical bills for the first time during trial would arguably take Defendants by surprise. Factor (2), however, weighs in Plaintiff's favor because the trial is two months away and the Court can order Plaintiff to submit the challenged medical bills to Defendants. For its part, factor (3) is on Plaintiff's side because the mere admission of medical bills does not risk disrupting the trial. And factor (4) favors Plaintiff because the medical bills are otherwise admissible and would help the trier of fact to assess damages. Therefore, although factor (5) may cut the other way, Plaintiff's failure to produce the medical bills is harmless. Accordingly, the Court declines to preclude this evidence.

**B.     Prior Bad Acts and Internal Affairs Files**

Defendants ask the Court to preclude Plaintiff from inquiring into prior incidents in which Officers Davis or Kelly might have used force on a suspect or detainee. Although Defendants fail to specify the inquiry they are seeking to preclude, they suggest that the Court should preclude Plaintiff from eliciting testimony about whether Davis and Kelly have used pepper spray on suspects or detainees.

The Court reserves ruling on this request. First, Defendants have not identified the evidence they seek to preclude with sufficient specificity. Second, inquiries along these lines may be relevant to Plaintiff's pattern-or-practice claim against the County.[2] Third, due to the request's vagueness, the Court cannot adequately assess whether any exceptions to the general prohibition against other acts' evidence may apply. *See* Fed. R. Civ. P. 404(b)(2). Thus, the Court reserves ruling on this request.

### C.     Justice Department Consent Decree and Memorandum of Agreement

Defendants seek to preclude the following two items of evidence: (1) a Consent Decree between the County and the Department of Justice (DOJ); and (2) a Memorandum of Agreement (Agreement) between the County and the DOJ. These documents are connected to a 1999 DOJ investigation into the Canine Section of the Prince George's County Police Department, and were executed in January of 2004.

Defendants argue that the Consent Decree is irrelevant because it addresses only policies and procedures pertaining to the handling of canines. Defendants also argue that it is irrelevant because it was not in effect at the time of the underlying incident. The Court agrees that the Consent Decree is irrelevant to Plaintiff's claims against the Officers. The Consent Decree focuses solely on policies and procedures pertaining to the handling and deployment of canines. As Plaintiff's claims against the Officers primarily involve whether they used excessive force by pepper spraying her, the connection between the Consent Decree and the incident is too tenuous to justify its admission.[3]

---

[2] Although Plaintiff's claims against the Country have been bifurcated, it is unclear whether Plaintiff is seeking to preclude this evidence in relation to the County.
[3] Defendants do not state whether they are seeking to exclude this evidence against the County, against which Plaintiff has asserted a pattern-or-practice claim. Therefore, the Court will reserve this question for trial.

For its part, Defendants argue that the Agreement is irrelevant because it expired roughly one-half year before the underlying incident. The Court disagrees. The Agreement contains specific information regarding the PG County Police Department's pepper spray policy. Although these specific guidelines might not have been in effect when the incident occurred, they were likely in effect during the Officers' employment with the County. Furthermore, even if they were not in effect, the policies, procedures, and practices that the Agreement sets forth relate to whether the Officers' use of force was reasonable. Accordingly, the Court declines to preclude Plaintiff from discussing and/or admitting at least portions of the Agreement.[4]

**D.   Testimony of Gloria Hardy and Dawn Brown**

Defendants seek to preclude testimony from the aforementioned potential witnesses. Plaintiff responds that she does not know the location of Hardy and Brown and that she has no intention of calling them. Therefore, the Court precludes the testimony of these two witnesses.

**E.   Expert Opinion and Report of Charles Duane Gautier**

Defendants seek the preclusion of a purported expert report that Charles Duane Gautier prepared. Gautier plans to testify on the difficulties Plaintiff will face in gaining employment after being discharged from government-related employment. He also plans to testify about the difficulty Plaintiff will have in "completing re-training, based on the result of her trauma from her incident with the police." Doc. No. 77-6. In this report, Gautier does not specify the relevant information he considered in arriving at these conclusions, simply stating that "most employers in the DC metropolitan area require police and FBI criminal record reports." *Id.* In terms of qualifications, Gautier states that he is the founder and CEO of a community-based nonprofit

---

[4] Defendants do not appear to argue that the Agreement is irrelevant to Plaintiff's pattern-or-practice claim against the County. Insofar as they do, the Court reserves this question for trial.

vocational and education training center located in an area (Anacostia) that traditionally has provided services to clients of the same demographic group as Plaintiff.

Defendants argue that Gautier's opinion testimony is inadmissible for several reasons. First, Defendants argue that it is irrelevant. Second, Defendants argue that Gautier is not qualified to offer opinions on employability. Third, Defendants argue that Gautier does not base his opinion on any accepted methodology. Fourth, Defendants argue that Gautier offers no reliable opinion on causation.

Rule 702 of the Federal Rules of Evidence provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993) (citation omitted).

In this case, Plaintiff has not proved the admissibility of Gautier's evidence by a preponderance of the evidence. For one, assuming Gautier has specialized knowledge, Plaintiff has not shown that this knowledge would help the trier of fact. Any reasonable layperson could conclude that having a police record would make it harder for someone to find government

employment. Second, inasmuch as Gautier bases his conclusions on the general observation that most employers in the DC metro area require background checks, Gautier has not based his testimony on sufficient facts and data. Third, Plaintiff has not proved that Gautier's testimony is the product of reliable principles and methods. Indeed, other than the general observation that most employers in the DC metro area require background checks, Gautier does not discuss the principles and methods he used to reach his conclusions. Finally, the record evidence does not support the conclusion that Gautier reliably applied these principles and methods to the facts of the case. Plaintiff testified that she was employed for at least four months before her deposition in 2009 and that she returned to school after the incident for two years. *See* Doc. No. 77-8. Gautier does not discuss these facts or explain how his conclusions are still valid in light of them. There is no indication he even considered them. Accordingly, the Court precludes Gautier's testimony and purported expert report.

## II. Plaintiff's Motion in Limine to Exclude Evidence Relating to Unrelated, Immaterial, Previous Pregnancy

Plaintiff seeks to preclude Defendants from introducing medical records regarding her "unsuccessful pregnancy."[5] Plaintiff contends that this evidence is irrelevant. Alternatively, Plaintiff asserts that the evidence is unfairly prejudicial. Defendants counter that the evidence is relevant to the question of what caused the emotional injuries, including PTSD, for which Plaintiff claims damages. Defendants also counter that, even if such evidence portends prejudice, the prejudice does not substantially outweigh the evidence's probative value.

---

[5] Plaintiff does not specify whether the "unsuccessful pregnancy" is a miscarriage, abortion, or some other failure to carry a child to term. Based on Plaintiff's presentation of her argument, the most reasonable conclusion is that "unsuccessful pregnancy" refers to a miscarriage. If it turns out that the unsuccessful pregnancy was an abortion (or some other potentially controversial action), the Court may entertain a motion for reconsideration.

7

The Court agrees with Defendants that preclusion of this evidence is improper. Rule 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, Rule 401 sets a relatively low threshold for relevance. Clearly, an unsuccessful pregnancy could cause emotional injury. Therefore, at a minimum, it has some tendency to make less probable Plaintiff's assertion that the Officers' use of excessive force caused her PTSD. Hence, the evidence is relevant under Rule 403.

Nor is the evidence unfairly prejudicial. The Court questions whether mere evidence of an unsuccessful pregnancy would excite the emotions of jurors to the point that they exhibit "irrational behavior." *Cf. Westfield Ins. Co. v. Harris*, 134 F.3d 608, 614 (4th Cir. 1998) (citation and internal quotation marks omitted). Absent more specific information about the unsuccessful pregnancy, it is equally plausible that it could arouse sympathy in jurors. Furthermore, even if Plaintiff played an identifiable role in the pregnancy's failure, there is, at least at this time, no indication that any prejudice thereby engendered would "substantially outweigh[]" its probabtive value. *Cf.* Fed. R. Evid. 403. Accordingly, the Court declines to preclude Defendants from introducing medical records regarding Plaintiff's unsuccessful pregnancy.

**III.     Plaintiff's Motion in Limine to Exclude Evidence Relating to Her Father's Homicide**

As with the evidence of her unsuccessful pregnancy, Plaintiff argues that evidence of her father's murder in 1996 is irrelevant and unfairly prejudicial. Defendants respond that the evidence is relevant to the issue whether the Officers' alleged use of excessive force caused Plaintiff's PTSD.

The evidence is relevant; it goes to the question of what caused Plaintiff's alleged PTSD. Granted, the murder took place approximately twelve years before the underlying incident,

which could undercut the inference that it caused Plaintiff's PTSD. Yet evidence of the murder of a close relative has some tendency to make this issue more or less probable.

Although it is a closer call, the Court disagrees that the evidence is unfairly prejudicial. Even though the murder took place several years ago, Plaintiff's own expert testified that a murder could constitute a stressful life event for PTSD purposes and that PTSD can last for years. Doc. No. 81-1 at 3–4. Furthermore, it is implausible that knowledge that Plaintiff's father was murdered would excite jurors to behave irrationally. Therefore, the Court declines to preclude this evidence.[6]

## IV. Defendants' Motion in Limine to Exclude Prejudicial and Undisclosed Expert Opinion of Dr. Goldman

Defendants assert that, for the first time, Plaintiff disclosed in her motions in limine that her expert, Dr. Goldman, would offer expert opinion that Plaintiff's "injuries are the direct and proximate result of Defendants' . . . unlawful and brutal battery of her and denial of her constitutional rights." Doc. No. 82-1 at 1. Plaintiff responds that this assertion distorts the record and that her expert does not plan to offer such evidence.

The Court agrees with Plaintiff. Obviously, as a medical doctor specializing in psychiatry, Dr. Goldman is not qualified to opine that the Officers' actions constituted the tort of battery and violated the Constitution. However, the statement that Plaintiff's "injuries are the direct and proximate result of Defendants' brutal battery and denial of her constitutional rights" is an averment in a legal brief, not an opinion from Dr. Goldman's report. Therefore, as Defendants raise no other objection to Dr. Goldman's report, the Court will allow Dr. Goldman to testify as to the cause of Plaintiff's alleged emotional injuries and any other appropriate matter.

---

[6] This decision assumes that a proper foundation for the question is laid.

**V.    Plaintiff's Motion to Disqualify Charles J. Key as an Expert Witness in the Fields of Chemical Agents and Chemical Agent Delivery Systems**

Plaintiff moves to disqualify Charles Key (Key) as an expert witness in the fields of chemical agents and chemical agent delivery systems. Defendants also offer Key as an expert in the use of force, police training, police practices, policies, and procedures, and defensive skills. Plaintiff does not challenge Key's qualifications in these other areas.

Generally, Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of a reliable opinion. *Cf.* Fed. R. Evid. 702. No talisman exists for determining an expert's qualifications and the reliability of his opinions; as a result, trial judges have "considerable leeway" to decide whether to admit expert testimony. *Cf. Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Although an expert's qualification in one area does not automatically qualify him to testify in a related area, the "expert's specialized knowledge and experience and the issues before the court need not be exact." *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392–93 (D. Md. 2001) (citation omitted). The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 593 (citation omitted). A district judge's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *Kumho Tire*, 526 U.S. at 152.

In this case, Defendants have submitted the following testimony to support the assertion that Key is qualified to testify as to the deployment and effects of pepper spray.

- Key worked at the Baltimore Police Department in various capacities from 1970 to 1993;

- Key wrote the Department's use of force guidelines, use of force general order, and several training lesson plans involving pepper spray;

- Key was trained and certified as an instructor in the deployment of pepper spray and chemical agents by the Maryland State Police;

- Key received training from the FBI in the use of defensive skills, which involved the use of pepper spray;

- Key received training in chemical agents and chemical agent delivery systems from the U.S. Army and two or three private companies;

- Key has been sprayed with pepper spray as a part of his training activities for the Department;

- Key has received training for the use of mace.

Plaintiff does not seem to dispute the veracity of this testimony. Rather, Plaintiff asserts that Key is unqualified because his most recent training with chemical agents and delivery systems was roughly seventeen years ago, and that he has not been recertified since then. Furthermore, observing that Key started working for the Department in 1970 and retired in 1996 to be a consultant, Plaintiff insists that many of the relevant trainings took place considerably more than sixteen years ago.

Although Plaintiff's observations have some merit, Defendants have shown by a preponderance of the evidence that Key has specialized knowledge and experience about pepper spray that would be helpful to the jury. Although most, if not all, of Key's training occurred several years ago, Key's training and experience is sufficiently substantial and varied to sustain the conclusion that Key has retained at least some of the specialized knowledge that he acquired through those experiences. Plaintiff's concerns over Key's apparent lack of current certification

and recent trainings relate more to the weight of Key's testimony and not its admissibility. Accordingly, the Court declines to preclude Key's testimony on the deployment and effects of pepper spray.

For the foregoing reasons, IT IS this **7th day of February, 2013**, by the U.S. District Court for the District of Maryland, hereby **ORDERED**:

1. That the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' First Motion in Limine (Doc. No. 77). Consequently:

    • The Court declines to preclude documentary evidence and testimony concerning the contested medical bills; instead, the Court orders Plaintiff to submit said bills to Defendants within **ten (10) days** of the date of this Order;

    • The Court reserves ruling on Defendants' request to preclude Plaintiff from inquiring into prior incidents in which Officers Davis or Kelly might have used force on a suspect or detainee;

    • The Court precludes admission of the Consent Decree as to the Officers;

    • The Court will allow Plaintiff to discuss and/or admit at least portions of the Agreement;

    • The Court precludes the testimony of putative witnesses Hardy and Brown;

    • The Court precludes Gautier's testimony and expert report;

2. That the Court **DENIES** Plaintiff's Motion in Limine to Exclude Evidence Relating to Unrelated, Immaterial, Previous Pregnancy (Doc. No. 78), with the result that the Court declines to preclude Defendants from introducing medical records regarding Plaintiff's unsuccessful pregnancy;

3. That the Court **DENIES** Plaintiff's Motion in Limine to Exclude Evidence Relating to Her Father's Homicide (Doc. No. 79), with the result that the Court declines to preclude evidence of Plaintiff's father's murder proffered to show that the Officers' conduct did not cause, or was not the sole cause of, Plaintiff's alleged PTSD, provided that an appropriate foundation for the question is laid;

4. That the Court **DENIES** Defendants' Motion in Limine to Exclude Prejudicial and Undisclosed Expert Opinion of Dr. Goldman (Doc. No. 82), with the result that the Court will allow Dr. Goldman to testify as to the cause of the emotional injuries of which Plaintiff complains and any other appropriate matter;

5. That the Court **DENIES** Plaintiff's Motion to Disqualify Charles J. Key as an Expert Witness in the Fields of Chemical Agents and Chemical Agent Delivery Systems (Doc. No. 86), with the result that the Court declines to preclude Key's testimony on the deployment and effects of pepper spray;

6. That the Clerk transmit a copy of this Order to all counsel of record.

| February 7, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |